Good morning, may it please the court. Jonathan Libby appearing on behalf of appellant Christopher Chaney. Your honors, Chris Chaney is currently serving what appears to be the longest sentence for computer hacking ever imposed in the Central District of California and one of the longest ever imposed in this country. Now given our limited time, unless the court has any questions regarding our ineffective assistance of counsel claim, we'll rely on the briefing and focus this morning on the procedural errors and substantive unreasonableness of the sentence. First your honors, the court of emergency imposed two-level enhancements for use of sophisticated means. The government appears to argue that all offenses under section 2b 1.1 need to be compared against your typical fraud offense, regardless of the nature of the crime. But of course that applies to theft, embezzlement, forgery, counterfeiting, insider trading, and computer hacking. It would not seem to make sense to apply those crimes and what happened in those crimes to your typical fraud offense. Essentially what the government appears to argue is that anytime there's a computer hacking crime the sophisticated means enhancements. Is it appropriate in deciding whether to apply that enhancement to kind of consider, not individual steps, but the scheme in totality? I think certainly the court can consider the scheme in totality in determining whether in a particular situation sophisticated means were used. Well then considering this scheme in totality, why isn't it appropriate to apply that enhancement? You've got an extensive period of time, you've got 60 victims involved, you've got use of hide my IP software, which I suppose if you know about it may not seem terribly sophisticated, but to a lot of folks there's a level of sophistication there. The use of multiple email addresses, the attempts to conceal the crime. Why aren't all those appropriate considerations in there? There's nothing really sophisticated about any of those things. These are things that your typical average person who uses a computer... Now wait a minute. Listen to what Judge Wynn said. To those of you who use computers and know about these add-ons and how they work, it seems obvious, but to an average person that doesn't know anything about this software program, doesn't that require a certain amount of sophistication? I mean we keep talking about Millennials being so much ahead of their elders and it's true. So I take your point, but what's the frame of reference? Well there are certainly going to be some people who are not very familiar with computers. That's certainly the case, but I think in... Well they may be familiar, but not with the techniques of using the software program that you can download. Well the Hide My IP software, there are hundreds, if not thousands, of similar programs that are available. Would it take someone to look into how do I hide my IP address from people to protect myself from those trying to find out who I am when I'm searching websites? Yeah. Not everyone perhaps is aware of that, but it's something that requires any type of sophistication. Well that's on concealment, so what about the access side? This is unauthorized access. Let's suppose, for example, let's suppose you talk about comparing to all the various crimes that are encompassed, but what if it's the crime of conviction? What if you just look at crime of conviction and then compare it to that? Well sure, and so what we had here was someone who, and we cited to a number of articles in our reply brief which talk about how this type of computer hacking is in fact the least sophisticated way to hack into a computer. Essentially, Mr. Chaney guessed at various individuals' email account names or was able to find them out through publicly available means. He then used the forgot my password feature that's available on, provided by all internet service providers if someone forgets the password when they're trying to access their email account. And I mean that happens when anyone tries to type in their password and it comes up that it's wrong, it offers you the option of changing your password. He then used publicly available information to answer the questions that the individual had to use. Again, nothing sophisticated about this. This is not someone who... Compared to whom? Well, compared to your typical computer hacking offense, which typically involves, and the government cited, similar offenses to the court below. It involves often using malware, installation of key loggers. In the individual infected hundreds of victims' computers, set it up through use of malware so that he could actually turn on the victims' webcams and in fact was then able to see those individuals nude and engage in sexually explicit conduct and then engage in extortion with those individuals. There is a sophisticated type of computer hacking. And of course there's computer hacking that's way more sophisticated than that, which can involve hacking into, say, Sony Pictures, and millions of people's account information becomes available. That is sophisticated. Here, by contrast, nothing particularly sophisticated involved here. I would also add, in the sensing guidelines, there are in fact additional enhancements that apply specifically to computer hacking offenses. Two levels if it involved an attempt to obtain personal information. Four levels for anyone convicted of trying to access or damage a protected computer. That's under 2B, 1.1B, now 17, and 18. So that's six level enhancements the Sentencing Commission's already provided for when you involve a defendant. That means an additional two level enhancement would appear to apply only if, in a particular computer hacking case, the defendant used particularly sophisticated means. Defined as especially complex or especially intricate offense conduct. So based on that, we would submit it was inappropriate to impose that two level enhancement. Your Honor, also... Is there any information that was applied to this case recently issued in November of this year, just last month, about the reads on the level of sophistication? Your Honor, not that I'm aware of, but that's certainly possible. I can certainly look into that. Your Honor, the court also failed to expressly resolve significant factual disputes that was raised. The pre-sentence report indicated that eight films containing child pornography were on Mr. Cheney's computer. Now, at the sentencing hearing, he emphatically denied that. That's a point I've been troubled by too. He didn't seem, the lawyer who's representing him, didn't seem to dispute that there was child pornography on the computer. There was. Was there? Is that disputed? I don't see where he disputes it. It sounds, I read him as saying, it's on there, but there's no evidence, and we deny it, that that's not exactly disputing that it's on the computer. Well, I will certainly concede defense counsel, who obviously we have suggested provided an effective sense of counsel, was perhaps not as articulate as he could have been. What he said on page 43 was Mr. Cheney emphatically denies those allegations. And then the judge says, what are you talking about? Well, and he said there had been no record evidence of placing him at the computer when this actually occurred. Yes. There are others living in the house. But counsel, he's assuming in that statement that there is something on the computer. He's denying his responsibility for it, but he's not saying there's no child porn on the computer. Yeah. On page 45, he says, I highlight Mr. Cheney's been very candid in the crime that he's committed and emphatically denies factually the defense counsel came to challenging the specific facts of whether there was child pornography. Didn't the judge say he would not take this into consideration in sentencing? He did not, Your Honor. And in fact, the court prior to the defense... Well, the court said, well, he denies them, speaking of the child pornography allegation, and he has not been charged with them. So anyway, we've covered the issue of the adjusted offense level, and he didn't make any adjustments. So there was no indication that that was considered beyond that statement, was there, in the record? Well, he says he's not been charged yet, is what the court actually said. And the court's response seems to be to response to defense counsel, yeah, he denies it. And? But that does not suggest that the court did not take it into consideration. Certainly, there's nothing in the record in which the court expressly indicated it was not going to consider it. And of course, what do we have here? We have a court that imposed a well-above-guideline sentence, more than 40 years. They imposed a maximum sentence, and probably would have imposed more if the maximum had been higher. The court may have. Certainly, Judge Otero was very upset about this case. But the government hadn't even sought anything more than a 71-month sentence. So can we say the court did not take these allegations of child pornography, which the court stressed at one point in the sentencing, that it did not take that into consideration? We certainly can't say that, and there's certainly nothing in the record indicating expressly that the court was not going to consider it. And given the fact that the court did not then resolve that dispute, we'd submit that under Fernandez-Zangulo, an en banc decision in this Court, automatic resentencing is in fact required. The government has suggested plain error applies, but the case it cites involved a case where there was no allegation of an accuracy that was actually made. So that does not appear to apply here. And I say I'm out of time. Thank you. Thank you again. Good morning, Your Honors, and may it please the Court, Wes Shue on behalf of the United States. Your Honor, I would like a few things that I would like to clarify to begin with. First, the district court did not impose a statutory maximum sentence. It imposed the statutory maximum sentence on the individual count, but the defendant was actually facing 65 years as a statutory maximum. So I just want to make that clear. There was a higher sentence available to the district court. It just chose not to impose it. And then, working backwards, the government agrees entirely with Judge Fischer's analysis of the record, which is that what the defense counsel objected to was the inference that was drawn from the statement in the PSR. The statement in the PSR was that the eight films of child pornography were found on the computer. What the defendant objected to below at sentencing was that he was responsible for those eight videos on the computer. As such, this court has held, in cases like Petrie, I believe, that the automatic reversal under Rule 32 does not apply to that situation. This was not an objection to the factual statement in the PSR that there were eight videos found on the computer. This was an objection to the inference that the district court drew from that statement. As such, it's not... Is that slicing it too thin under the facts of this particular case? Because the inference matters. You know, the allegation in the PSR was extremely serious. Child pornography in the court viewed it as very serious. And he's saying, look, it wasn't mine, essentially. Is there anything in the record that we can look to to say, well, given that objection, the denial of responsibility for the possession of child pornography, the court disregarded that in the sentencing analysis? I don't think so, Your Honor. I don't think the record is clear that the district court disregarded the possession of child pornography. I think the government would argue instead that should the court find that the district court had a responsibility to resolve that dispute, it did so. It was clear from the record preceding that the district court was holding him responsible for knowingly downloading and possessing that child pornography. There was no question in the statements that the district court made in the two pages prior to the defense objection. And then the defense makes the objection and concludes with he hasn't been charged with child pornography. The district court says he hasn't been charged yet with child pornography, and then moves on to another issue. So it's clear that the district court found that the defendant was, in fact, responsible for knowing possession of child pornography. But what the defense is asking here is that the district court had to go beyond that and that after the defense raised an argument with respect to that, the district court would have to go back and say, I haven't changed my mind. I don't think that's what this court's case law suggests. The district court clearly held him responsible for that. It is not clear from the record whether or not he then used it to impose the sentence or carved it out. But I would suggest that first, the district court was not required to expressly resolve it. The case that the defense cites for the fact that it is not plain error predates Alano and Puckett. The case that the government cites, Christensen, makes clear that plain error applies to failure to make the sentence procedural objection. And Christensen is not the only case that this court has decided on that point. Christensen has been followed, for example, in Reyna Acevedo, which is 562 Federal Appendix 582. And that's another case where a substantive objection was made but no procedural objection was made. And there are other cases as well. Where did you say that the court, Judge Otero, resolved the responsibility question? Well, in the paragraphs before... Why don't you cite the transcript? I've got it. I'm looking at 43 where the counsel says there's no record evidence of placing him at the computer when this actually occurred. I assume that's referring to downloading. He's not the only person living at the house from which this computer was seized. There were other people in and out, other traffic. He says, the court says, okay, well, he denies the allegations. Correct. Perhaps I misspoke, Your Honor. What the district court says, starting on page 33, line 10, is he starts out by saying, of great concern here, separate in part from all of the conduct that Mr. Cheney engaged in when his computers were searched and seized on February 11th, February 2011, and then searched, they contained child pornography. Maybe the court needs to hear more about that from the government. But the child pornography that was seized from the defendant's computer included children as young as eight years old. I've read that. Where does he resolve who was responsible for it being on there? Well, I'm sorry. Maybe I misspoke. I think what I was trying to suggest is that he didn't resolve the specific objection that the defense counsel made. I agree with that. But what the government would submit is clear from the record, is that the district court was holding him responsible for that child pornography. Maybe I'm still not being clear. The district court was responsible for it in what sense? That he owned the computer and it was on there? Yes. And that he believed that that was a characteristic that was attributable to the defendant. So meaning that he not only resolved the fact that the defendant's computer had child pornography, but also resolved the inference that the defendant was responsible for that possession is what you're saying. Exactly. Correct. Because I thought from looking at what the court said about, okay, you've objected. We're done with the guideline calculation and didn't adjust the offense level. And he talked about lifetime release. The defendant was responsible for it, but the court didn't resolve it. Or the record at least is murky as to whether he was going to take it into consideration in determining the appropriate sentence. No? Yes. I would agree with the last statement that the record is murky as to whether or not he ultimately included it in imposing sentence. But I guess, for example, on the bottom of excerpt of record page 42, the district court in talking about the child pornography says the children, Mr. Chaney, when you have this type of pornography, the children are the victims here. There's a whole market for this. And you perpetrate and assist and support that market by possessing this type of material. So let me see if I can get your position clear. Your position is one, the district court did resolve the question of whether he is responsible for the child pornography and in fact held him responsible for the child pornography being on the computer. And two, it's unclear whether he took that into consideration in sentencing. I think just to, I agree with most of that statement. I want to be clear. The government does not suggest that the defendant raised a specific objection and the district court resolved that specific objection. My point is that based on the record that leads up to the objection, it is clear that the district court's position was the defendant knowingly downloaded and possessed that child, the eight child pornography films that were found on the computer. That's what's confusing to me, counsel. You say he didn't resolve the objection, the specific objection at ER 43. And he's denying that he was the one who downloaded it. And you're saying, okay, he didn't specifically address that. You're going back to what happened in what was said earlier. Correct. Okay. Yes, that's exactly right. But I guess what I'm trying to say, and apparently not very artfully, is that it is clear that the district court, up until the objection was made, believed that the defendant was responsible for knowingly possessing the child pornography. And having downloaded it. Correct. Yes. Or the interpretation is you, and I thought that's how you answered my earlier attempt to clarify, as to whether he was being held responsible for the pornography because he owned the computer, regardless of who downloaded it. I believe. That he knew it was on there. Yes. Even if he himself did not download it, he owned the computer and he knew it was on there. Yes. Yes. I would agree with that. Yes. You think he earlier resolved the knowing part, by implication at least, earlier. Correct. Exactly. That he had, the district court had made a clear factual finding that he had knowingly possessed the child pornography that was found on the computer. The defendant then makes the specific objection to the inference that is drawn from that, which again is different from objecting to the factual statement in the PSR. But then the district court does not clearly resolve that, although the concluding statement that he has not yet been charged with possession of child pornography certainly suggests, when taken in full context, that the district court had resolved that against the defendant. So it's enough if he found and was, and ruled and sentenced on the basis that he knowingly possessed, regardless of whether he downloaded it or not. Yes. I agree with that. I'm not asking you to agree. I'm asking if that's your position. Yes, Your Honor. Yes. That is the position that I'm trying to suggest. And it's worth in conclusion that this was not a guidelines-based issue. This is because it was not the child pornography guidelines that were applicable. We've spent a lot of time on this. I'd still like to hear, and I know you're over time, but hopefully our presiding judge will allow you to explain why and respond to the arguments on sophisticated means. May I proceed? Do you look to the underlying conviction to then compare it to access to computers? You're not encompassing the whole universe of crimes that can be committed under this. You have to look at whether the charged offenses, illegal access or unlawful access of a computer and damage and wiretapping, you look to those crimes and then you decide, is this more sophisticated than is normal in those kinds of crimes? Is that your base point? Well, I think the base point, that is one base point. I would argue also that it is not clear whether or not this particular crime of conviction should be compared with all of the crimes that are funneled to 2B1.1, in terms of sophisticated means. In other words, a paper fraud or bank fraud conviction. You're saying that computer fraud is inherently sophisticated then? No. As compared with all the other crimes? No, Your Honor. I just think that... Well, stick with this one then. I'm not sure what your position is, but if you accept it as it has to be compared with means, other means and other crimes of computer access, damage and wiretapping, what was sophisticated about this? I think several things, Your Honor. I think guessing the security questions and getting those for 60 accounts. I think establishing the forwarding email addresses within the victim's account so that even once the victims regain control of their email accounts, he would still receive every email that they received. He would receive a copy at the forwarded email address. And I also believe that using HideMyIP to conceal his internet protocol address was a sophisticated means of... Even though there are apparently many, many programs that are out there because people don't want, for various legitimate uses, don't want their email address to show up. Yes. I think that the fact that this defendant chose to outsource the sophisticated means of the crime doesn't make it any less sophisticated. No, it's not outsourcing. It's making use of a device that apparently is common knowledge amongst anybody who uses a computer except people of our generation. Well, I would... I don't want to lump Judge Wynn into that. You can lump me in, but I think part of it is the awareness that I guess using the internet can be tracked, like how it can be tracked. I have to admit, I'm totally lost. I don't download something like HideMyIP. So isn't it part of it is the understanding of how things work and then taking the steps to effectuate the concealment? That's exactly right, Your Honor. It's understanding how internet protocol addressing could lead the government to the defendant and the techniques that you could use and the available programs that you can use to hide your internet protocol address in order to... I know you're well over time, but I wanted the government to have an opportunity to briefly address the statements of TB and TC and the way in which it was utilized, if Judge Reinhart would indulge me, because I recognize the confrontation rules don't apply in sentencing, but these were incredibly impactful victim statements that it appears the district court relied heavily on them. So how should this panel look at those issues and the court's heavy reliance on statements that are disputed by the defendant? I don't think... well, the... obviously the precedent of this court is that only a minimal indicia of reliability is required for the district court to rely on those statements. I think in this particular case there was far more than a minimum indicia of reliability. These victim impact statements were corroborative of each other. They were corroborated by the way in which this... the crime of conviction was performed, and they were also corroborated by evidence that was found on defendant's computer that was submitted to the court through an agent declaration. And so I think this... these statements were... far more reliable than any of the statements in the cases cited by the defense. In addition to that, I think that because they were so consistent with the... with the crime of conviction, and given the lack of motive of the statements, the government would submit that the district court was entitled to rely on those and to the district court, while relying on those statements, did have many other reasons for imposing the sentence that it imposed that were stated over the course of the sentencing hearing. Thank you, counsel. Thank you, Your Honor. I will give you two minutes to reply. Thank you, Your Honor. On the last point with respect to TB and TC, this court has said in McGowan where the court found statements were insufficiently reliable, where they're not subject to many of the procedural mechanisms traditionally used to test witness testimony, such as cross-examination of the accuser, in order to test veracity. And what we have here are two anonymous statements. Let's be clear. These are anonymous statements. All we have are TB and TC. We don't know who these individuals are. They were not identified as victims of the offense. Mr. Chaney has not been charged with any crime with respect to either of these two individuals. And all we have are these two statements submitted by the government, and then its own case agent in a paragraph corroborating these are what they said. But we know nothing about whether what they, in fact, have said are true. They weren't subject to cross-examination. We don't know who they are. This is exactly the type of unreliable information that the court has talked about in terms of there being a due process violation. And as Your Honor pointed out, the court relied heavily, very heavily on these two statements in deciding to impose this well-above-guideline sentence, which, in fact, was the statutory Your Honor, it's probably, Your Honor. There certainly was no objection specifically made in the district court by trial counsel. That's true. With respect to... You have 10 seconds. With respect to the... You can't resolve a dispute until a dispute is made. And the case law, as was outlined in our brief, makes very clear it must be an express resolution, and if it's unequivocal, the case must be remanded. Thank you, Your Honor. The case is adjourned.
judges: Reinhardt, Fisher, Nguyen